JAMES DUNSHEE, executor &c. of Samuel Dunshee, deceased, *vs.* MAX GOLDBACHER.

A testator, by the second clause of his will, gave and bequeathed to his executors, all his estate both real and personal, in trust, to pay his funeral expenses and debts. By the third clause he gave to his wife one-third of the net income of his estate, and the use of his household furniture, during widowhood. By the fourth clause he directed his executers to let or lease the real estate, keeping the buildings insured and in good tenantable order during his wife's widowhood; and in case he should survive her, the executors were directed after his demise, to dispose of all his estate, both real and personal, at public or private sale, within six months after his demise, giving deeds for the real estate. By the seventh clause the testator directed the residue of his estate to be divided between his four sons. The testator did not survive his wife.

*Held,* 1. That notwithstanding the devise and bequest, in words, by the second clause of the will, the testator's real estate, on his death, descended to, and vested in, his four sons, subject to the gift by the third clause, to his wife, of one-third of the income of his estate during her widowhood, and which gift as to his real estate, was, in substance and effect, a devise of one-third of his real estate to her, during her widowhood.

2. That the power of sale given to the executors by the fourth clause of the will, must be viewed as a power in trust, merely; it being not only contingent upon the event of the testator surviving his wife, but its exercise being also limited, expressly, to six months after the decease of the testator.

3. That had the testator survived his wife, his executors having failed to exercise the power of sale within the time limited by the testator, they could not effectively exercise it after that period.

4. That the executors could not, after the lapse of six months from the testator's decease, give or convey a good or perfect title to the real estate.

J., one of the testator's sons, after the death of his father, died, leaving a will by which he gave and bequeathed to his wife all, any and every interest he then had or might acquire or become possessed of in his said father's estate · and directed that at the decease of his wife, the said property, or so much thereof as should then remain in her possession, or under her control, should be equally divided among his children. *Held* that under this will the widow of J., the testator, took a life estate, and his children a vested remainder in fee, in all the real estate of which he died seised, including the real estate, or the estate or interest in the real estate, which he took and had, as heir at law of his father, (the original testator,) or under or by his will.

THIS was a controversy submitted to the court, without action, under section 372 of the Code of Procedure, upon the following statement of facts:

In July, 1868, an agreement in writing, and under seal, was entered into between the above named plaintiff and the above named defendant, whereby the plaintiff sold to the defendant three certain lots of land, with the buildings thereon, situate on the south side of 143d street, in the city of New York, together bounded, beginning at a point 500 feet west of Eleventh avenue, (or 475 feet west of the new drive or boulevard, so called,) thence running southerly to the centre line of the block, thence westerly along said centre line 75 feet, thence northerly to 143d street, and thence easterly 75 feet to the point of beginning, for the price or sum of $5120, (of which $500 was paid at the date of said contract, leaving a balance still due of $4620,) the plaintiff to give a proper deed for conveying and assuring to the defendant the fee simple of said premises, free from all incumbrances, which deed should be delivered and the balance of the purchase money paid August 30, 1868, on which day the taking title, &c., was adjourned by consent of parties. That an executor's deed of said premises, executed by the plaintiff and Henry W. Dunshee, as executors &c. of Samuel Dunshee, deceased, was subsequently tendered to said defendant, and the balance of the purchase money demanded of him, who declined to pay the same, on the ground of objections to and alleged defects of title; and that the defendant was unwilling to complete his purchase and take said title until the court should have passed upon said objections and alleged defects.

The premises in question were originally owned by Samuel Dunshee, who died seised of the same in January, 1854, leaving him surviving his widow Sophia V. Dunshee and four sons, viz., William K., John, James, (the plaintiff,) and Henry W., and one granddaughter, Eunice E., wife of Onderdonk Angevine, daughter of a deceased son Elias O., his only heirs at law. He also left a will, which was duly admitted to probate by the surrogate of New

York county, February 21, 1854, and is recorded in said surrogate's office, in liber 108 of wills, page 471, which will is in the words and figures following, viz:

" In the name of God, amen. I, Samuel Dunshee, of the city of New York, house carpenter, being of sound and disposing mind and memory, do make, proclaim and publish this instrument as my last will and testament, hereby declaring and making null and void all and every will, or part of a will, or instrument of what kind soever, relating thereunto, heretofore made or executed by me.

1st. I do hereby constitute and appoint my two sons, James and Henry W. Dunshee, executors, together with my beloved wife, Sophia V. Dunshee, executrix, or the survivor or survivors of them, to be the executors of this my last will and testament.

2d. I give and bequeath unto my said executors and executrix, (should she survive me,) in trust, all my estate, both real and personal, of which I may die seised, to be disposed of in the following manner, that is to say, I wish them to pay all my funeral expenses, and all my just and honest debts.

3d. I give and bequeath unto my beloved wife, Sophia V., one full third of the net income of my said estate, and also the use and occupancy of all my household furniture during her widowhood.

4th. I direct my said executors to let or lease out all my real estate to the best advantage, keeping the buildings insured and in good tenantable order during her widowhood; but in case I survive her, then it is my wish and will that my executors, after my demise, shall dispose of all my estate, both real and personal, either at public or private sale, at such time as they may think most advantageous, within six months after my demise, giving good, clean executors' deeds for the real estate.

5th. It is my wish and will that my executors, or the survivor of them, shall pay over the sum of $1000 to the

following benevolent and christian institutions, viz., American Bible Society, $200; American Tract Society, $200; American and Foreign and Christian Union, $200; to the Society for Domestic Missions of the Reformed Protestant Dutch Church, under general Synod, $200; unto the Foreign Missionary Society of said church, $100; and to the Young Men's Education Society of said church, (of which the Rev. John Knox is senior pastor,) $100, to aid poor but pious young men to prepare for the gospel ministry.

6th. I give and bequeath to my granddaughter, Eunice Esther, (the only child of my late son, Elias O. Dunshee,) and now the wife of Onderdonk Angevine, the sum of $1000, to her and heirs to her or their own proper use and behoof forever.

7th. And finally, it is my wish and will, that to the balance of my estate in the hands of my executors, or the survivor of them, shall be added a certain bond which I hold against my son John, for the sum of $500, to which is to be added simple interest, at the rate of six per cent per annum, from the date of said bond to the final settlement of my estate; and also a certain note which I hold against my son William K., for $139; also one quarter's rent due on the 1st day of May, 1853, for the rent of my house and premises south side of 143d street, between 11th and 12th avenues, amounting to $37.50; to both of said sums is to be added simple interest at the rate of six per cent per annum from their respective dates to the final settlement of my estate; the above sums, with interest on them, to be added to my estate, and set off to my sons, John and William K., as part and parcel of their respective portions of my estate, as I wish all my children to share and share alike. My executors, or the survivor of them, will thus distribute my estate equally to my four sons, namely, John, William K., James and Henry W. Dunshee; but if any or either of the above heirs refuse to comply with the above just and equal distribution, it is my wish

Dunshee *v.* Goldbacher.

and will that the above demands against them be handed over to them or him, and such balance in cash as would be coming to them or him who shall refuse to sign a full satisfaction or release to my executors, or the survivor of them, shall be paid over by my executors to the before named benevolent and christian institutions, in like proportions as the $1000 is divided among them."

Letters testamentary upon said will were duly granted by said surrogate, to the executors and executrix named therein, February 21, 1854, and are recorded in said surrogate's office, in liber 11 of letters testamentay, page 386.

Sophia V. Dunshee, the widow and executrix of said Samuel Dunshee, died September 17th, 1861, never having remarried.

All the heirs at law of Samuel Dunshee are now living, and of full age, except one son, John, who died September 8, 1867, leaving him surviving, his widow, Catharine Dunshee, and four children, viz., Samuel S. K., Spencer H. C., Eunice Emma, wife of Horatio N. Fraser, and Harriet C., his only heirs at law.

The said John Dunshee also left a will, which was duly admitted to probate by the surrogate of New York county, January 6, 1868, and is recorded in said surrogate's office, in liber 177 of wills, page 48, which will is in the words and figures following, to wit:

"In the name of God, amen. I, John Dunshee, of the city of New York, being of sound and disposing mind and memory, do hereby make and publish this my last will and testament.

1st. I direct my executors hereinafter appointed, out of my effects and estate, to pay all my just and honest debts.

2d. I give and bequeath to my beloved wife Catherine, * * * all household stores and provisions, and the linen, china and glass, together with all moneys and bank notes which may be in my dwelling-house at the time of my decease.

3d. I also give to my said wife Catherine the use and enjoyment during her life, of the household goods and furniture, fixtures and utensils, all plate, and the books, paintings and prints of which I shall die possessed.

4th. And from and after the decease of my said wife, I direct that the said articles, or so much as shall remain thereof, shall be divided equally among my children, to wit, equally according to value among Samuel Schuyler Kuypers Dunshee, Spencer Houghton Cohen Dunshee, Eunice Emma Dunshee, and Harriet Catherine Dunshee.

5th. I also give and bequeath unto my said wife Catherine, all, any and every interest I now have or may acquire or become possessed of in my father's (Samuel Dunshee's) estate, together with all and any papers in relation to the same which may be in my possession at the time of my decease, or which may thereafter properly belong to me; and I charge my executors hereinafter appointed to demand, and if necessary, and not detrimental to the interests of my heirs named herein, to enforce the collection of whatever may be due to me from said estate, and to dispose of the same as herein directed.

6th. And at the decease of my said wife, I direct that said property, or the amount collected thereon, or so much thereof as shall be then remaining in the possession or under the control of my said wife, shall be divided equally among my said children, to wit, Samuel Schuyler Kuypers Dunshee, Spencer Houghton Cohen Dunshee, Eunice Emma Dunshee and Harriet Catherine Dunshee.

7th. I appoint the said Samuel Schuyler Kuypers Dunshee and the said Spencer Houghton Cohen Dunshee, executors of this my said will and testament.

8th. I hereby revoke and annul any will or wills heretofore executed by me."

None of the admissions contained in the above statement were in anywise to affect either party, or to be re-

Dunshee *v.* Goldbacher.

garded as made, except for the purpose of this submission of this controversy.

The questions submitted to the court upon this case, were as follows:

1. Did the fee of the premises pass under the will of Samuel Dunshee to his executors—to his four sons living at the time of his decease—or to his heirs at law, (which latter would include his granddaughter?)

2. If the fee passed to the executors, have they a good and sufficient power of sale under the will, so that their deed alone will vest a perfect title in their grantee; and is the power of sale contained in the will operative, upon the facts as submitted?

3. If the fee passed to the sons or heirs of Samuel Dunshee, did the share, interest and estate of John Dunshee, one of said sons and heirs in said premises, pass under the said John's will to his executors, to his widow Catherine, or to his children therein named?

*George S.* and *John H. Stitt*, for the plaintiff.

I. Under the will of Samuel Dunshee, the executors took all his estate, real and personal, with a power to dispose of, sell the same, and convert the same into money. 1. The power of sale is expressly given in the second and fourth clauses. The second clause is a devise to the executors of his property, "to be disposed of" in a certain way; and by the fourth clause, after his decease, if he should survive his wife, they are directed to sell the real and personal estate. And in the seventh clause the executors are directed to distribute the balance of his estate in their hands "equally to" his four sons. The disposition intended in the second clause is not merely to pay funeral expenses and his debts, but must be construed to mean a disposition or sale and conversion into money to pay funeral expenses, debts, to pay the legacies in the fifth and sixth clauses, and distribute and divide the balance as provided

in the seventh clause. The fourth clause is a direction to lease and withhold a sale during his wife's widowhood, if she should survive him; and if he should survive her, he directs them to sell within six months after his death. They are directed to sell within that six months. Their failure to sell within six months does not destroy their power of sale. Their power of sale is not conditioned upon its being performed within that six months. 2. The distribution provided in the seventh clause could not be made unless the estate should be converted into money, and a balance adjusted by the addition to the balance of the bond held against John, and the note against William K. A sale was necessary in order to carry out the provisions of the will. The will of Samuel Dunshee makes a clear, absolute devise of all his property to his executors in trust.

(1.) To pay debts. (2.) To pay one third of the net income to the widow during her widowhood. (3.) To pay certain legacies. (4.) To divide the balance in their hands, with the addition thereto of the bond of John, and the note of William K.; among his four sons, in the way marked out in the seventh clause. (*Meakings* v. *Cromwell*, 5 *N. Y. Rep.* 136.)

II. The will of John Dunshee gives to his wife his interest in his father's estate. The sixth clause is void, because it attempts to create a remainder, after giving his wife the whole estate, and allowing her to use and consume the same. It expressly provides that what the widow shall leave of the estate shall go to his children. This is void. (1 *Jarman on Wills*, 332.)

III. It must therefore follow : 1. That the executors of Samuel Dunshee's will have full power to convey the land in question ; or, 2. If they have not, his three surviving sons and the widow of John Dunshee can convey his property to the defendant, and thereby give him a good and valid title thereto.

Dunshee *v.* Goldbacher.

*Joseph C. Levi,* for the defendant.

I. On the death of Samuel Dunshee, the fee vested, notwithstanding the will, in his heirs at law. 1. The testator obviously intended to pass the fee to his executors in trust, mainly for the benefit of the widow, during her widowhood. 2. The only power of sale contained in the will is a contingent one, dependent upon an event which never happened, viz., " in case I survive her," and limited in its exercise to a stated period of time, viz., " within six months after my demise," which has long since passed. Even had the power not been contingent, the failure of the executors to exercise it within the period limited by the will, is fatal, and they cannot give a good title. (*Richardson* v. *Sharpe,* 29 *Barb.* 222.) 3. No other disposition of the real estate is made. The direction in the seventh clause to distribute his estate to his sons, obviously refers to personal property, the proceeds of sales of real estate. 4. The power of sale thus being inefficient and inoperative, and no other devise made of the real estate, it passed to the heirs at law.

II. It was evidently the intention of John Dunshee, in his will, to give his wife only a life estate, and his four children therein named, a vested remainder in fee. 1. This hypothesis is consistent with the reading of every part of the will. (*a.*) In the second clause he gives her certain specific personal property. (*b.*) By the third clause he gives her the use and enjoyment " during her life" of certain other specific personal property. (*c.*) The fourth clause directs that upon her decease " the said articles or so much as shall remain thereof, shall be divided equally among my children," by name. (*d.*) By the fifth clause he gives her all his interest in his father's estate, &c., and he charges his executors, if necessary, " and not detrimental to the interests of my heirs named herein, to enforce the collection of whatever may be due to me from said estate, and to dispose of the same as herein directed."

(e.) The sixth clause proceeds : " And at the decease of my said wife, I direct that said property, or the amount collected thereon, or so much thereof as shall be then remaining in the possession or under the control of my said wife, shall be divided equally among my said children," by name. (f.) The mind of the testator was evidently bent upon the ultimate possession by his children of his whole estate. If he had intended to give the whole to his wife, he would not have been so solicitous about the equal division among his children by name; and he negatively forbids the enforcing of the collection of the very property in question, left in the first instance to the wife, if the same should be " detrimental to the interests of my heirs named herein," showing that the interests of his wife were subordinate in his mind to those of his children. 2. This intention is further manifest from the similarity of the fifth and sixth clauses (which affect the real estate) to the second, third and fourth clauses (which relate only to personal property.) The fifth clause is obviously intended to be uniform with the third, and it is so, lacking only the important words, " the use and enjoyment during her life." The court may, and will supply these words in the second line of the fifth clause, which would thereby fix the extent and duration of the wife's interest in the real estate as the same words in the third clause do in the personal property. 3. This intention is still further manifest by the distinction in the will between perishable and imperishable property. (a.) The wife is not to have the absolute disposal of even all the personal property. (b.) The second clause gives her all the perishable personal property. (c.) Then comes a distinct clause giving her only " the use and enjoyment during her life" of all the imperishable personal property. (d.) The words " or so much as shall remain thereof," in the fourth clause, obviously refer only to the perishable property bequeathed in the second clause. (e.) The same distinction is intended to be made in the

sixth clause. 4. It is a rule in the construction of wills, particularly of those inartificially and obscurely drawn, to advert, in order to discover the intention of the testator, to his situation at the time of making the will, as to the number of his children, the different kinds of property of which he was seised, &c. (6 *Cruise's Dig.* 158.) Applying this rule to the case in point, what do we find ? Taking John Dunshee's will by itself, it certainly does not look like an intended will of real estate. (1.) The word *devise* is not used. (2.) The fifth and sixth clauses would read equally well for a bequest exclusively of personal property. Taking the dates, and reading the two wills together, it is evident that John Dunshee, in his own will, did not have real estate in his mind. *Prima facie*, his father had provided for an equitable conversion of all his real into personal estate, and a division of the proceeds among his sons. This division was to be made on the mother's death. She had died but a few years previous, and the real estate was wholly or partly unsold. If he had meant real estate, he would not have spoken of " enforcing the collection of whatever might be due to him," or have referred to such estate as " the amount collected thereon, or so much thereof as shall be then remaining." These last words refer only to money—to the proceeds of sales of his father's land—not to the land itself. (*Lynes* v. *Townsend*, 33 *N. Y. Rep.* 558.) 5. An intent to exclude the heir must be clear and manifest. And that intent must be collected from the words used, and not from conjecture. It is the policy of the law, (after providing for the widow's dower,) as to the bulk of the estate, and as between the widow and the children or heirs, to favor the latter. They should not be excluded from their father's estate unless the intent so to exclude them is clear and beyond doubt. The provisions of the Revised Statutes declaring the rights of after-born unprovided issue are an instance of this. (*See Willes*, 141; 3 *T. R.* 83; 2 *Bos. & P.* 247 ; 5 *Abb. Dig.*

" *Will;*" *Doe* v. *Dring,* 2 *Mau. & S.* 448; *Doe* v. *Wilkinson,* 2 *D. & E.* 209; 33 *N. Y. Rep.* 558, *supra, and cases there cited.*)

III. But apart from the question of intent, the will itself follows the principles herein enunciated. 1. There is no particular ambiguity; it agrees in all its parts. 2. The sixth clause should be read: "And at the decease of my said wife, I direct that said property * * * shall be divided equally," &c., leaving out the intermediate words, which obviously refer only to perishable or personal property. (*Pond* v. *Bergh,* 10 *Paige,* 140.) 3. A devise to a person in language which would ordinarily convey the whole estate, and a subsequent provision that upon a contingent event the estate thus given shall go to another person, are not repugnant. The latter clause controls the former, and the general words of conveyance are to be understood in a qualified and not in an absolute sense. (*Hatfield* v. *Sneden,* 42 *Barb.* 615. See *Jarman's Rules,* 5, 6, 10, 19, 21, *cited in* 1 *Redfield,* 424.)

IV. Judgment should. be rendered that the fee vested, on the death of Samuel Dunshee, in his heirs at law; and that the children of John Dunshee have a vested remainder in fee, subject to their mother's life estate.

*By the Court,* SUTHERLAND, J. Notwithstanding the devise and bequest in words, by the second clause of the will of Samuel Dunshee, to his executors and executrix, of all his estate, real and personal, his real estate on his death vested in his four sons, John, William K., James and Henry W., subject to the gift by the third clause to his wife of one-third of the income of his estate during her widowhood, and which gift as to his real estate was, in substance and effect, a devise of one-third of his real estate to her during her widowhood. The power of sale given to the executors by the fourth clause of the will must be viewed as a power in trust merely.

In the matter of Diez.

It is not only contingent upon the event of the testator surviving his wife, (which he did not,) but its exercise is also limited expressly to six months after the decease of the testator.

Had the testator survived his wife, his executors having failed to exercise the power of sale within the time limited by the testator, I do not see how they could effectively exercise it after that period. (*See Richardson* v. *Sharpe*, 29 *Barb*. 222.)

On the facts stated, I am of the opinion that the executors of Samuel Dunshee cannot give or convey a good or perfect title to the premises in question.

I think that under the will of John Dunshee, his widow took a life estate, and his children named in the will a vested remainder in fee in all the real estate of which he died seised, including, of course, the real estate, or the estate or interest in the real estate, which he took and had as heir at law of his father, Samuel, or under or by his will.

There should be judgment on the facts submitted, according to the foregoing views.

[NEW YORK GENERAL TERM, April 4, 1870. *Ingraham, Cardozo* and *Sutherland*, Justices.]